557 F.2d 35
 Alvin TROTMAN and Franklin Mitchell, Plaintiffs-Appellees,
v.
The PALISADES INTERSTATE PARK COMMISSION, Morgan Clark, John
Doe Officers of the Palisades Interstate Park
Commission 1-3, Defendants,
Palisades Interstate Park Commission, Defendant-Appellant.
 No. 470, Docket 76-7498.
 United States Court of Appeals,
Second Circuit.
 Submitted Jan. 10, 1977.
Decided May 27, 1977.
 
 1
 Louis J. Lefkowitz, Atty. Gen. of N. Y., Albany (Ruth Kessler Toch, Sol. Gen., Peter J. Dooley, Asst. Atty. Gen., Albany, of counsel), for defendant-appellant, Palisades Interstate Park Commission.
 
 
 2
 Carroll, McClary & Reid, New York City (James S. Carroll, III, New York City, of counsel), for plaintiffs-appellees, Alvin Trotman and Franklin Mitchell.
 
 
 3
 Before GURFEIN and MESKILL, Circuit Judges, and BARTELS, District Judge.*
 
 BARTELS, District Judge:
 
 4
 Plaintiffs bring this civil rights action against Palisades Interstate Park Commission ("Commission") and three officers of the Commission under 42 U.S.C. §§ 1983 and 1988, alleging jurisdiction under 28 U.S.C. §§ 1331 and 1343, seeking compensatory and punitive damages of $600,000 predicated upon false arrest, illegal search and seizure and certain pendent state claims of prima facie tort and defamation.
 
 
 5
 The facts inferred from the rather vague allegations of the complaint, which we accept as true, are as follows: On June 15, 1974, plaintiff Franklin Mitchell was driving his automobile with plaintiff Alvin Trotman as occupant on Palisades Interstate Parkway when they were halted without a warrant by two park policemen, employees of the State of New York assigned to the Commission, who forced the plaintiffs outside of the automobile at gunpoint and searched the car. The plaintiffs were not arrested but at the end of the search the defendants falsely accused the plaintiffs of possessing a quantity of marihuana in the car and thereafter defamed the plaintiffs by reporting such false information to their employer, which resulted in their suspension from work, loss of pay, embarrassment and humiliation. Plaintiffs contend that the officers' action violated the plaintiffs' rights under the Fourth, Fifth, Eighth and Fourteenth Amendments and that the Commission is liable under a pendent state claim under the doctrine of Respondeat Superior.
 
 
 6
 The Commission moved pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss the complaint upon the ground of Eleventh Amendment immunity from suit. Judge Knapp denied the motion, holding that the Commission was not entitled to immunity from suit under the Eleventh Amendment granted to the states primarily because the Commission could not pledge the credit of either state except by and with the authority of the legislature thereof, and certified this issue for interlocutory appeal. We disagree.
 
 
 7
 The fundamental issue on this appeal is whether the plaintiffs may bring this suit in the federal court, which poses two inquiries: (i) whether this suit against the Commission may be considered a suit against the State of New York itself; and, if so, (ii) whether the ensuing Eleventh Amendment immunity from suit in the federal court has been waived by the state. Not involved is the question of state immunity from tort liability (cf. The Onteora, 298 F. 553 (S.D.N.Y.1923) ) as distinguished from Eleventh Amendment immunity or from liability under 42 U.S.C. §§ 1983 and 1988.
 
 
 8
 * On June 2, 1937, New York and New Jersey, in order to provide greater flexibility and harmony in the management of the park lands within their borders known as Palisades Interstate Park, entered into a compact approved by Congress on August 19, 1937, creating a "body corporate and politic" known as the "Palisades Interstate Park Commission."[1] Among other things, the articles of the compact vested title to the park lands in the Commission and provided for the appointment of its members by the Governors of both states. Article II provided that the Commission "shall be a joint corporate municipal instrumentality of both the state of New York and the state of New Jersey for the purpose of effecting the objects of this compact and which shall be deemed to be performing governmental functions of the two states in the performance of its duties"; that the Commission "shall have power to sue and be sued, to use a common seal and to make and adopt suitable by-laws" and further, that "the members of the commission shall constitute a board." Article III of the compact permits each state unilaterally to modify the functions and powers of the Commission with respect to those park lands lying within the particular state, and the Commission has been given functions and powers in New York different from those in New Jersey.[2] Article VI of the compact provided that the Commission "shall not pledge the credit of either state except by and with the authority of the legislature thereof." Article VII of the compact covered tort liability and expressly stated that:
 
 
 9
 "Neither the state of New York nor the state of New Jersey shall be liable for any torts of the commission, its members, officers or employees, except as provided by the laws of such state, but each member, officer and employee of the commission shall, with respect to any tort committed by him in the exercise of his duties or in the course of his employment as such member, officer or employee, be deemed to be an officer or employee of the state where such tort was committed, and any liability arising from such tort shall be governed by the laws of such state."II
 
 
 10
 While there are many factors[3] which must be considered in determining whether a state instrumentality can raise the bar of the Eleventh Amendment in a particular suit, the most significant is whether any liability against the agency must be paid from public funds in the state treasury. The Supreme Court held in Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974):
 
 
 11
 "Thus the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment. Great Northern Life Insurance Co. v. Read (322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944)); Kennecott Copper Corp. v. State Tax Comm'n, 327 U.S. 573, 66 S.Ct. 745, 90 L.Ed. 862 (1946)."
 
 
 12
 The Court held later in Fitzpatrick v. Bitzer, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), that when Congress, acting under section five of the Fourteenth Amendment, authorizes federal courts to award money damages in favor of a private individual against a state guilty of discrimination under Title VII of the Civil Rights Act of 1964, the Eleventh Amendment is no bar. This action is brought, however, under 42 U.S.C. §§ 1983 & 1988 which contain no such authorization for the award of money damages against the states. The Supreme Court noted in Edelman that there is no remedial power in a federal court to require the payment of funds from a state treasury in a § 1983 action. We believe that Fitzpatrick, supra, does not undermine that statement. The question is therefore whether the Eleventh Amendment immunity of the states from federal suit may be invoked by the Commission.
 
 
 13
 We fail to perceive any reason why a bi-state commission cannot, when sued in the federal court, enjoy the Eleventh Amendment immunity of its signatory states. "(T)he nature of a suit as one against the state is to be determined by the essential nature and effect of the proceeding." Ford Motor Co. v. Treasury Dep't of Indiana, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). We believe that if the nature and effect of a suit against the Commission would be to impose a liability which must be paid from public funds in the state treasury of one of the signatory states, then that suit is barred by the Eleventh Amendment. See Edelman v. Jordan, supra. Compare Howell v. Port of New York Authority, 34 F.Supp. 797 (D.N.J.1940) (immunity found for interstate authority) with Byram River v. Village of Port Chester,394 F.Supp. 618 (S.D.N.Y.1975) (no immunity found).
 
 
 14
 Searching for revenue from which a judgment might be paid, we note that the compact and the N.Y. Parks & Recreation Law indicate the existence of three sources of Commission revenues: (a) gifts and bequests, (b) fees and (c) appropriations. The Commission cannot rely upon gifts and bequests which may come in unpredictable sums with various legally enforceable conditions attached.[4] What the Commission collects in fees for use of the New York segment of the park must be turned over to the state treasury.[5] Appropriations heretofore or hereafter made by the legislature obviously must be paid from the state treasury. Fitzpatrick v. Bitzer, 519 F.2d 559 (2d Cir. 1975), modified, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). Thus, an analysis of all the pertinent factors as set out in the compact and applicable New York laws leads us to the inevitable conclusion that in reality this suit against the Commission is one against the State of New York.
 
 III
 
 15
 We are thus faced with the question of whether New York has waived its Eleventh Amendment immunity from federal suit. We believe it pertinent to begin with Hamilton's statement in The Federalist, No. 81, quoted in Edelman v. Jordan, supra, 415 U.S. at 660 n.9, 94 S.Ct. 1347 that "It is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent. . . . (T)he exemption, as one of the attributes of sovereignty, is now enjoyed by the government of every State in the Union." As far as the State of New York is concerned, section 8 of the New York Court of Claims Act (McKinney's Judiciary 1963) specifically provides that the State of New York waives its immunity from liability and consents to be sued upon condition that the claimant brings suit in the Court of Claims. New York courts have held that the Commission is an instrumentality of the state and that the "State has assumed liability for damages of this character on the express condition that the claimant complies with the limitations of the Court of Claims Act." Conklin v. Palisades Interstate Park Comm'n, 282 App.Div. 728, 122 N.Y.S.2d 403 (2d Dep't 1953). See Mercado v. State, 29 A.D.2d 579, 285 N.Y.S.2d 703 (3d Dep't 1967); Dietrich v. Palisades Interstate Parkway, 114 Misc. 425, 187 N.Y.S. 454 (Sup.Ct.1921). Cf. Matherson v. Long Island State Park Comm'n, 442 F.2d 566 (2d Cir. 1971). Thus, the plaintiffs are not without remedy in a New York state court. A broader construction of the sue-and-be-sued clause contained in the Palisades Interstate Park Commission compact is found in Interstate Wrecking Co. v. Palisades Interstate Park Comm'n, 57 N.J. 342, 273 A.2d 10 (1971), where the New Jersey Supreme Court held in a contract action (as distinguished from a tort action) that the State of New York had, by approving the sue-and-be-sued clause, waived its sovereign immunity to be sued in the New Jersey state courts notwithstanding the limitation of the New York Court of Claims Act.
 
 
 16
 However, it does not follow from this decision that the compact must also be construed as waiving New York State's Eleventh Amendment immunity from suits in the federal court. This poses a separate and distinct issue. As stated by the Supreme Court in Petty v. Tennessee-Missouri Bridge Comm'n,359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959), the meaning of the sue-and-be-sued clause in an interstate compact turns on federal rather than state law. In Petty, Congress had consented to the interstate compact between Tennessee and Missouri with a proviso that it should not be construed to diminish the jurisdiction of the federal courts in regard to the navigable waters or interstate commerce. The Supreme Court construed this to mean "that the States accepting it waived any immunity from suit which they otherwise might have." 359 U.S. at 280, 79 S.Ct. at 789.[6] In construing the sue-and-be-sued clause of this compact we rely upon the rationale of Edelman v. Jordan, supra, 415 U.S. at 673, 94 S.Ct. at 1360, where the Supreme Court said:
 
 
 17
 "In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction.' Murray v. Wilson Distilling Co., 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)."
 
 
 18
 Moreover, in Great Northern Life Ins. Co. v. Read, 322 U.S. 47, 54, 64 S.Ct. 873, 877, 88 L.Ed. 1121 (1944), the Supreme Court, in rejecting a suit in the federal court where the state had consented to a suit only in the state court, stated:
 
 
 19
 "When a state authorizes a suit against itself to do justice to taxpayers who deem themselves injured by any exaction, it is not consonant with our dual system for the federal courts to be astute to read the consent to embrace federal as well as state courts. . . . (W)hen we are dealing with the sovereign exemption from judicial interference in the vital field of financial administration a clear declaration of the state's intention to submit its fiscal problems to other courts than those of its own creation must be found."
 
 
 20
 To the same effect is Knight v. New York, 443 F.2d 415 (2d Cir. 1971).
 
 
 21
 Consequently we do not construe the sue-and-be-sued clause to extend the consent of the states to be sued in the state courts, to a waiver of the states' Eleventh Amendment immunity in the federal courts simply because Congress has approved the compact.
 
 
 22
 Reversed and remanded with instructions to dismiss the complaint for lack of jurisdiction.
 
 
 
 *
 Of the Eastern District of New York, sitting by designation
 
 
 [1]
 Compact between New York and New Jersey providing for the creation of the Palisades Interstate Park Commission, June 2, 1937, Art. II, approved Aug. 19, 1937, 75th Cong., 1st Sess., 50 Stat. 719
 
 
 [2]
 See N.Y. Parks & Rec.L.Art. 9 (McKinney's Supp.1976); N.J.S.A. §§ 32:14-1 to 32:17-13 (West's 1963, Supp.1976-77). The compact does not expressly state how damages in a civil rights suit are to be apportioned between the compacting states, but the division of liabilities and responsibilities made in the compact and laws relating thereto, especially Article VII, indicate that New York would ultimately pay a judgment against the Commission for allegedly wrongful conduct of Commission employees committed within New York
 
 
 [3]
 See Fitzpatrick v. Bitzer, 519 F.2d 559, 564-65 (2d Cir. 1975), modified, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976)
 
 
 [4]
 Compact, Article V
 
 
 [5]
 N.Y. State Fin.L. § 121 (McKinney's 1974)
 
 
 [6]
 Another reason advanced by the Court for finding a waiver, which is not applicable in this case, was that the Bridge Commission was a governmental corporation launched into an industrial or business field and approved by Congress "in an era when the immunity of corporations performing governmental functions was not in favor in the federal field." Petty v. Tenn.-Mo. Bridge Comm'n, 359 U.S. 275, 280, 79 S.Ct. 785, 789, 3 L.Ed.2d 804 (1959)