George O'DONNELL, Plaintiff,

v.

PORT AUTHORITY OF NEW YORK AND NEW JERSEY, et al., Defendants.

No. 84 Civ. 8188 (CES).

United States District Court, S.D. New York.

Sept. 3, 1987.

Eckhaus & Scolnick by Steven Eckhaus, New York City, for plaintiff.

Philip A. Maurer, New York City, for defendants.

STEWART, District Judge.

THE COURT: Gentlemen, I have reviewed the record and have reached some conclusions which I will give you. It has not been an easy job. I will give you my opinion now.

In this action plaintiff seeks relief under section 1983, claiming in count one, which is the only remaining count, all others having been dismissed, that he has been deprived of various constitutional rights. Prior to the fall of 1984 plaintiff had been active in the Port Authority union, the Patrolmen's Benevolent Association, and in the course thereof had criticized some of its actions. He also had been involved in legal matters in which he took positions apparently opposed to that taken by the Port Authority.

In September 1984, plaintiff was involved in an episode in which it was alleged by a superior officer, Lieutenant Finnegan, that plaintiff had gone off duty without permission to do so in violation of a return roll call. It was alleged that he was present when the lieutenant issued the order for a return roll call but thereafter went off duty prematurely in disregard of these instructions. At that time the defendant Captain Elique had just been placed in charge of the Port Authority Bus Terminal where plaintiff was assigned to work. Pursuant to the rules of the Port Authority, Elique summoned plaintiff to his office on October 17, 1984, to serve him with these charges. Plaintiff arrived with Mark O'Neill, a union delegate, to assist him. Elique remained seated at his desk and plaintiff was seated in front of him. O'Neill was seated to the right and to the rear of plaintiff who was separated from O'Neill by a small table.

While Elique was serving the charges on plaintiff Elique claims that plaintiff removed his shoes and socks and crossed his right knee with his left foot, left leg. Elique, presuming that plaintiff was trying to aggravate him, said and did nothing about this. After Elique finished presenting the charges, the meeting, which took about five or six minutes, ended. Neither plaintiff nor O'Neill said anything at the meeting. Plaintiff denies that he removed his shoes and socks. O'Neill testified that he did not see plaintiff remove his shoes and socks, but emphasized that he could not say that it did not happen. Also, he declined to sign an affidavit later that it did not happen and required that the affidavit be revised to state that he did not observe it.

At the meeting plaintiff had a tape recorder which he turned on and kept hidden so that Elique was not aware of it. Elique testified that when he learned of this it suggested to him that plaintiff hoped to incite Elique into making incriminating or inflammatory remarks by taking off his shoes and socks.

Two sergeants spoke to Elique about an hour and a half after the episode and asked about plaintiff taking off his shoes and socks and whether it had happened. They said they had heard about it from other police officers. This suggests that plaintiff had reported the episode to others. In any event we find that, based on all the evidence, plaintiff did remove his shoes and socks. Plaintiff has failed to show by a preponderance of the evidence that Captain Elique's testimony was not accurate and truthful. Thereafter Captain Elique discussed the matter with Inspector Boland, who accepted Elique's recommendation that plaintiff be examined by a psychiatrist.

Boland arranged for plaintiff to see Dr. Hess, which he did on November 5. There was no evidence that Boland gave any instructions to, or made any requests of, Hess other than to schedule the examination. On November 5, when plaintiff appeared before Dr. Hess, plaintiff announced that he had a tape recorder and intended to use it. Dr. Hess said that he wouldn't allow it, but plaintiff insisted, and then Dr. Hess refused to go ahead with the examination. He filed a report that plaintiff was "psychiatrically unfit for police duty which would require carrying a gun until an adequate examination can be obtained."

Pursuant to Dr. Hess's record Boland issued instructions as provided by the rules that plaintiff be placed on medical restriction and that his gun, shield and identification card, his ID card, be taken from him. This meant that plaintiff had to stay at home unless he received permission to leave, which incidentally was granted him on request. And he continued on full pay.

Subsequently, in early December, plaintiff agreed to a medical exam without a tape recorder and was found by another doctor to be fit to return to duty.

We find that there was no impropriety by either Elique or Boland at any stage of these proceedings.

Subsequently, plaintiff was found to have acted improperly by leaving the return roll call without permission and was docked two days' pay. Plaintiff complains about a missing tape recording of the radio calls in connection with the return roll call episode. Since the charge against plaintiff, however, depended not on what was carried on the radio but on the oral orders of Lieutenant Finnegan, given while plaintiff was present, the tape recording would not have been relevant.

Both Elique and Boland testified that they had no interest in the affairs of the union, had no reason to interfere in any way with union activities and were not aware that plaintiff was running for office at the time of the episode in question.

■ There is no evidence to support plaintiff's contention that Elique and Boland acted to prejudice plaintiff's efforts to be elected to union office. Accordingly, we grant defendants' motion to dismiss the complaint as to the two individual defendants, including the charge of false imprisonment which was added at the last moment.

■ With respect to the Port Authority there is no evidence to support plaintiff's claims as to it, and in any event under the Eleventh Amendment the Port Authority is not amenable to suit in this case. I am relying on a Third Circuit opinion, *Port Authority Police Benevolent Association v. The Port Authority,* 819 F.2d 413 (3d Cir.1987). The plaintiff has pointed to a Second Circuit decision, *Raysor v. The Port Authority,* 768 F.2d 34 (2d Cir.1985), which I believe is not pertinent, because the question of the Eleventh Amendment immunity was not raised in that case.

With respect to the Port Authority, none of its rules which are here in question were shown to be unconstitutional and they were properly applied in a constitutional manner.