**William ROCKWELL, Plaintiff,**

v.

**NEW JERSEY TRANSIT RAIL OPERATIONS, INC., Defendant.**

Civ. No. 84–4214.

United States District Court, D. New Jersey.

March 24, 1988.

Curran & Hannaway by Frank Baldo, Philadelphia, Pa., for plaintiff.

W. Cary Edwards, Atty. Gen. of New Jersey by Emerald L. Erickson, Trenton, N.J., for defendant.

## OPINION

CLARKSON S. FISHER, District Judge.

Before the court is a motion to dismiss the action for lack of subject matter jurisdiction brought by the defendant, New Jersey Transit Rail Operations, Inc. (hereafter "New Jersey Transit"). Specifically, defendant argues that the Eleventh Amendment of the United States Constitution bars the present suit.

The Eleventh Amendment states:

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

Although the Amendment's literal terms encompass only suits by citizens of another state, this immunity extends as well to suits brought by a citizen against his own state in federal court. *Hans v. Louisiana,* 134 U.S. 1, 10, 10 S.Ct. 504, 505, 33 L.Ed. 842 (1890), *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974).

■ Notwithstanding the immunity, a state may be subjected to federal jurisdiction in one of two ways. First, Congress may override a state's immunity where it exercises its legislative powers to enforce the substantive provisions of the Due Process Clause of the Fourteenth Amendment. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976); *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed. 2d 171 (1985). In *Atascadero State Hosp., supra,* the Supreme Court stated:

Congress may abrogate the state's constitutionally secured immunity from suit in federal court only by making its intention unmistakenly clear in the language of the statute. The fundamental nature of the interest implicated by the Eleventh Amendment dictates this conclusion.

*Id.* at 242, 105 S.Ct. at 3147. The second way in which a state may be subject to suit in federal court is where the state has waived its immunity. *Clark v. Barnard,* 108 U.S. 436, 447, 2 S.Ct. 878, 882, 27 L.Ed. 780 (1883). A waiver of immunity, however, is not routinely found. Rather, a court will find such a waiver "only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Edelman, supra,* 415 U.S. at 673, 94 S.Ct. at 1361, *quoting Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909).

■ In general, the immunity afforded by the Amendment extends not only to cases where the state itself is a party to the suit, but also to suits against state agencies, instrumentalities and officers where the state is, in fact, the real party in interest. *Edelman, supra,* 415 U.S. at 663, 94 S.Ct. at 1355. In this regard, I need only briefly address New Jersey Transit's right to claim immunity from suit under the Amendment. A number of cases have considered the issue and have concluded that New Jersey Transit is, in fact, the *alter ego* of the state government of New Jersey. *Gibson–Homans Co. v. New Jersey Transit Corp.,* 560 F.Supp. 110, 113 (D.N.J.1982); *Saddle River Tours v. New Jersey Department of Transit, et al.* (No. 83–1776 D.N.J., October 31, 1983), *affirmed,* 745 F.2d 48 (3d Cir.1984). Indeed, Rockwell offers no opposition on this point.

### a. *Congressional Abrogation*

■ The question raised by this motion is whether a state, operating a railroad in interstate commerce, may be sued in federal court under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51, *et seq.* The answer depends on to what extent the Supreme Court's decision in *Parden v. Terminal Ry. of Alabama Docks Dept.,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), survives the Court's recent decision in *Welch v. State Dept. of Highways and Public Transportation, et al.,* 483 U.S. ——, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987).

In *Parden, supra,* the Court held that a state may be sued under FELA in federal court, notwithstanding a state's Eleventh Amendment immunity. The Court held:

We think that Congress, in making the FELA applicable to "every" common carrier by railroad in interstate commerce, meant what it said. That congressional statutes regulating railroads in interstate commerce apply to such railroads whether they are state owned or privately owned is hardly a novel proposition; ...

*Id.* 377 U.S. at 187–188, 84 S.Ct. at 1210. On the issue of congressional intent to abrogate a state's immunity, the Court went on to say:

If Congress made the judgment that, in view of the dangers of railroad work and the difficulty of recovering for personal injuries under existing rules, railroad workers in interstate commerce should be provided with the right of action created by the FELA, we should not presume to say, in the absence of express provision to the contrary, that it intended to exclude a particular group of such workers from the benefits conferred by the Act. To read a "sovereign immunity exception" into the Act would result, moreover, in a right without a remedy; it would mean that Congress made "every"

interstate railroad liable in damages to injured employees but left one class of such employees—those whose employers happen to be state owned—without any effective means of enforcing that liability. We are unwilling to conclude that Congress intended so pointless and frustrating a result. We therefore read the FELA as authorizing suit in a Federal District Court against state-owned as well as privately-owned common carriers by railroad in interstate commerce.

*Id.* at 189–90, 84 S.Ct. at 1211–12.

There is no question that, after the Court's decision in *Welch, supra,* this aspect of the Court's holding in *Parden* is no longer good law. In *Welch,* the Court stated that subsequent cases have uniformly held that Congress must unequivocally express its intent to override a state's Eleventh–Amendment immunity. *Id.,* 483 U.S. at ——, 107 S.Ct. at 2948, 97 L.Ed.2d at 399, *citing Atascadero, supra,* 473 U.S. at 242, 105 S.Ct. at 3147; *Pennhurst State Sch. and Hosp. v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984); and *Quern v. Jordan,* 440 U.S. 332, 342–45, 99 S.Ct. 1139, 1145–46, 59 L.Ed.2d 358 (1979). Thus, the Court held that "[t]o the extent that *Parden v. Terminal Ry., supra,* is inconsistent with the requirement that an abrogation of Eleventh–Amendment immunity by Congress must be expressed in unmistakably clear language, it is overruled." *Welch, supra,* 483 U.S. at ——, 107 S.Ct. at 2948, 97 L.Ed.2d at 399. *See also U.S. v. Union Gas Co.,* 832 F.2d 1343, 1346 (3d Cir.1987).

Because *Welch* held that the Jones Act did not express an unmistakable intention to abrogate Eleventh–Amendment immunity, Rockwell attempts to distinguish this motion inasmuch as the present case deals with FELA. In this vein, plaintiff argues that the Jones Act incorporates only the remedial provisions of the FELA, rather than the jurisdictional bases of the statute. The Jones Act, 46 U.S.C. § 688, extends to "any seaman who shall suffer personal injury in the course of his employment." The FELA is applicable to "every common carrier by railroad while engaging in commerce between any of the several

states...." 45 U.S.C. § 51. Thus, Rockwell contends that, while the Jones Act designates a class of plaintiffs, Congress, in enacting the FELA, specified a particular group of defendants which includes state-run railroads.

There is no distinction to be made between *Parden* and *Welch* based on Rockwell's argument. Rockwell relies on far too narrow a reading of *Welch.* Whether a state employs a seaman or a railroad worker, it is set apart from other employers by virtue of its constitutional role in a federalist system. *Welch, supra,* 483 U.S. at ——, 107 S.Ct. at 2947, 97 L.Ed.2d at 398. Although *Parden* did not draw this distinction, a number of subsequent cases recognize the special status occupied by a state. *See Edelman, supra; Employees of the Dept. of Public Health and Welfare of Missouri v. Dept. of Public Health and Welfare of Missouri,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973). *Welch, supra,* 483 U.S. at ——, 107 S.Ct. at 2947, 97 L.Ed.2d at 398. It was because the *Parden* court treated the state employer as it would have a private employer that the court concluded that, in view of the broad reach of the FELA, Congress could not have intended to exclude state workers from its coverage. *Parden, supra,* 377 U.S. at 190, 84 S.Ct. at 1211. ("We shall not presume to say, in the absence of express provision to the contrary, that it [Congress] intended to exclude a particular group ... from the benefits conferred by the Act.") The aforementioned subsequent line of Supreme Court cases, including, most recently, *Welch,* makes clear, however, that Eleventh–Amendment abrogation requires just the opposite. To wit, Congress must expressly state its desire to subject a state to federal jurisdiction. Thus, while *Welch,* in its literal terms, deals only with the Jones Act, its discussion concerning the abrogation of Eleventh–Amendment immunity is equally applicable to the FELA. As neither the Jones Act nor the FELA sets forth a clear and unmistakable intent on the part of Congress to abrogate a state's Eleventh–

Amendment immunity, the plaintiff's argument must fail.

### b. *Waiver*

■ In addition to the foregoing contentions regarding abrogation, Rockwell further argues that the State of New Jersey and New Jersey Transit have made it abundantly clear that it has consented to suit in federal court. As noted above, a waiver requires either the "most express language" or "such overwhelming implications ... as will leave no room for any other reasonable construction." *Edelman, supra,* 415 U.S. at 673, 94 S.Ct. at 1360. Primarily, Rockwell points to 27 N.J.S.A. § 25–5, the New Jersey Transit enabling statute, which, among other things, empowers New Jersey Transit to "sue and be sued." In *Pennhurst II, supra,* the Court explained that "[a] state's constitutional interest in immunity encompasses not only *whether* it may be sued, but *where* it may be sued." *Id.,* 465 U.S. at 99, 104 S.Ct. at 907. For either a state statute or a provision of the state's constitution to rise to the level of a waiver of the state's Eleventh–Amendment immunity, the Supreme Court has made it clear that the particular provision relied on must indicate the state's specific intention to be sued in federal court. *Atascadero State Hosp., supra,* 473 U.S. at 241, 105 S.Ct. at 3147.

Examining N.J.S.A. 27:25–5, there is nothing within the statute which specifies that either the State of New Jersey or New Jersey Transit has consented to be sued in federal court. In *Walker v. Transport of New Jersey,* 534 F.Supp. 719 (E.D.Pa.1982), the court noted that the statute on which Rockwell relies does not operate as a waiver of sovereign immunity. Rather, the court noted, the statute simply "confers capacity to be sued." *Id.* at 720. Therefore, there is no clear and unmistakable waiver of sovereign immunity.

Rockwell also argues that the preamble to the union agreement among New Jersey Transit and the transport Workers Union of Amesrica and the Brotherhood of Railway Carman of the United States and Canada provides further evidence that the defendant has waived its Eleventh–Amendment immunities in this context. The preamble states that one of the purposes of the Union aagreement is to give recognition to the "historical rights and privileges of railroad employees." Rockwell contends that among those historical rights is a railroad worker's cause of action under the FELA. To accept plaintiff's argument that this rather general statement constitutes the clear and unmistakable evidence that the State has consented to waive its Eleventh–Amendment immunity requires a leap over a large barrier. The statement itself does not specifically include the FELA as one of the "historical" rights of railroad workers. Plaintiff has chosen not to submit the complete union agreement on which he relies, and, consequently, there is nothing before the court to suggest that remedies under the FELA are part of the rights embodied in the agreement. Accordingly, I conclude that there is insufficient indication that New Jersey Transit, by its actions, has waived its Eleventh–Amendment immunity.

### c. *Equal Protection*

■ Finally, Rockwell argues that "if he cannot enforce his rights in a federal court while other railroad employees can do so" he is denied equal protection of the law. This rather curious argument is premised on the fact that Congress passed FELA in its power to regulate interstate commerce; that the Act permits a railroad employee to sue his employer for violation of FELA in federal court; and, finally, that any state action which discriminates state employees from other railroad employees is a violation of the Equal Protection Clause. This argument is without merit. The outcome of which Rockwell complains is not a result of some arbitrary and capricious classification by the State of New Jersey. Rather, it is the result compelled by the Eleventh Amendment. In *Ex parte State of New York,* 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057 (1921), the Court noted:

That a state may not be sued without its consent is a fundamental rule of jurisprudence having so important a bearing upon the construction of the Constitution of the United States that it has become

established by repeated decisions of this Court that the entire judicial power granted by the Constitution does not embrace authority to entertain a suit brought by private parties against a state without consent given....

*Id.* at 497, 41 S.Ct. at 589.

#### d. *Timeliness*

Finally, Rockwell asserts that New Jersey Transit's motion to dismiss for lack of jurisdiction is untimely, citing the defendant's previous silence both in its Answer and in the Final Pretrial Order. Fed. R.Civ.P. 12(h)(3), however, provides that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction over the subject matter, the court shall dismiss the action." As lack of subject matter jurisdiction may be raised at any time, the present motion is timely.

Thus, for the foregoing reasons, this court is without subject matter jurisdiction to entertain this suit. An order accompanies this opinion. No costs.