Patrick FEENEY, Plaintiff,

v.

PORT AUTHORITY TRANS–HUDSON
CORPORATION, Defendant.

No. 87 Civ. 9256(RJW).

United States District Court,
S.D. New York.

Aug. 11, 1988.

Peter M.J. Reilly, Islip, N.Y., for plaintiff.

Joseph Lesser, New York City, for defendant; Keith E. Harris, of counsel.

## OPINION

ROBERT J. WARD, District Judge.

Plaintiff, an employee of the Port Authority Trans–Hudson Corporation ("PATH"), has brought this action against the railroad pursuant to the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51, the Boiler Inspection Act ("BIA"), 45 U.S.C. § 22, and the Safety Appliance Act ("SAA"), 45 U.S.C. § 1, for injuries arising from PATH's alleged negligence in maintaining safe working conditions. Defendant moves for judgment on the pleadings pursuant to Rule 12(c), Fed.R.Civ.P. For the reasons that follow, defendant's motion is granted.

## BACKGROUND

On or about August 6, 1986, plaintiff avers he was injured at the PATH car shop in Jersey City, New Jersey. Plaintiff, seeking three million dollars in damages, alleges that his injuries resulted from the negligent and careless conduct of PATH's agents, servants, and employees in their railroad operations.

PATH operates an interstate commuter railroad between points in New York and New Jersey. It is a wholly-owned subsidiary of the Port Authority of New York and New Jersey. The Port Authority is a corporate body created by compact between the States of New York and New Jersey with the consent of the Congress of the United States.[1] PATH moves to dismiss pursuant to Rule 12(c), Fed.R.Civ.P., on the ground that PATH, as a wholly-owned subsidiary of the Port Authority, is protected by the States' Eleventh Amendment immunity from suit in federal court without consent.

## DISCUSSION

A motion pursuant to Rule 12(c), Fed.R.Civ.P., is designed to provide a means of disposing of cases when the material facts are not in dispute and judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court will take judicial notice. 5 Wright and Miller, *Federal Practice and Procedure* ¶ 1367 (1973). A motion for judgment on the pleadings may be made at any time after the pleadings are closed and can raise several of the defenses enumerated in Rule 12(b), Fed.R.Civ.P.

In this case, defendant is raising a 12(b)(1), Fed.R.Civ.P., claim of lack of subject matter jurisdiction in its 12(c), Fed.R.Civ.P., motion.[2] In evaluating a motion

---

1. The Port Authority was created by an interstate compact entered into by New York and New Jersey in recognition of the fact that "the commerce of the Port of New York has greatly developed and increased and territory in and around the Port has become commercially one center or district". N.Y.Unconsol.Laws § 6401 (McKinney 1979).

   The statute provides:
   It is confidently believed that a better coordination of the terminal, transportation and other facilities of commerce in, about and through the port of New York, will result in great economies, benefiting the nation, as well as the states of New York and New Jersey.
   *Id.,* at § 6401.

2. Defendant styles this motion as one for judgement on the pleadings on the ground that the pleadings do not give the court subject matter jurisdiction. Rule 12(c), Fed.R.Civ.P., is generally used to secure a dismissal of a case on the basis of the underlying substantive merits of the claims and defenses revealed in the formal pleadings. 5 Wright and Miller *Federal Practice and Procedure,* § 1367, at 685. When using Rule 12(c), courts have applied the same standards for granting the appropriate relief as they

under Rule 12(b)(1), the complaint as a whole will be construed broadly and liberally, but argumentative inferences favorable to the pleader will not be drawn. 5 Wright and Miller, *Federal Practice and Procedure* § 1350 (1973). In addition, the burden of proof on a Rule 12(b)(1) motion is on the party asserting jurisdiction. *Id.* A case "should not be dismissed [under a 12(b)(1) motion] for want of jurisdiction except when it 'appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.' " *AVC Nederland B.V. v. Atrium Investment Partnership*, 740 F.2d 148, 152–53 (2d Cir.1984) (quoting *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946)). *See Albert v. Carovano*, 824 F.2d 1333, 1337–1338 (2d Cir.1987); *Guilini v. Blessing*, 654 F.2d 189, 193 (2d Cir.1981); *Morabito v. Blum*, 528 F.Supp. 252, 260 (S.D.N.Y.1981). Here, because plaintiff's claim is immaterial and frivolous if sovereign immunity applies to PATH, the court must determine to what extent PATH is protected from suit in federal court by the Eleventh Amendment.[3]

## I. The Eleventh Amendment

The Eleventh Amendment to the constitution provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of any foreign State. U.S. Const. Amend. XI.[4]

A literal reading of the Eleventh Amendment would solely preclude suits against a state brought by citizens of a different state, or by a citizen of a foreign state. While the Amendment by its terms does not bar suits against a state by its own citizens, the Supreme Court has consistently held that an unconsenting state is immune from suits brought in federal court by its own citizens as well as by citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662, 94 S.Ct. 1347, 1355, 39 L.Ed. 2d 662 (1974) (quoting *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)); *Employees v. Missouri Dept. of Public Health and Welfare*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973).[5]

A crucial issue with respect to Eleventh Amendment immunity is determining when a state is a party in interest. It is well established that even though a state is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment. *Edelman v. Jordan, supra,* 415 U.S. at 663, 94 S.Ct. at 1355. Without question, a lawsuit is brought against a state for Eleventh Amendment purposes whenever the state or one of its agencies or departments is named as a defendant. *See Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) *(per curiam ).* This principle has been expanded to include suits against federally chartered corpora-

---

would have employed had the motion been brought under Rules 12(b)(1), (6) or (7), Fed.R. Civ.P. *Id.* at 688. Rule 12(c), Fed.R.Civ.P., is appropriate for the instant case because the instant motion can be determined solely on questions of law and statutory interpretation.

**3.** The immunity created by the Eleventh Amendment is not a "personal" defense, but a limitation of the jurisdiction granted to the federal courts by Article III of the constitution. The limitation deprives federal courts of any jurisdiction to entertain such claims, and thus may be raised at any point in a proceeding. *Pennhurst State School Hospital v. Halderman*, 465 U.S. 89, 98, 104 S.Ct. 900, 906, 79 L.Ed.2d 67 (1984).

**4.** The adoption of the Eleventh Amendment was in response to *Chisholm v. Georgia*, 2 U.S. 419, 2 Dall. 419, 1 L.Ed. 440 (1793). In *Chisholm,* a citizen of South Carolina was allowed to sue the State of Georgia under the provisions of Article III. Justice Iredell dissented asserting that Article III had not been intended to change the common law rule that a sovereign state cannot be sued without its consent. The Eleventh Amendment was adopted in 1798, within five years of the *Chisholm* decision.

**5.** As the Supreme Court concluded in *Hans v. Louisiana*, 134 U.S. 1, 16, 10 S.Ct. 504, 507, 33 L.Ed. 842 (1890) "[t]he suability of a state without its consent was a thing unknown to the law," and, accordingly, the authors of the Constitution could not have intended to confer jurisdiction on the federal courts to entertain lawsuits brought by individuals against unconsenting states.

tions since 1900. *Smith v. Reeves*, 178 U.S. 436, 20 S.Ct. 919, 44 L.Ed. 1140 (1900). In *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945), the Supreme Court stated:

> [W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.

*Id.* at 464, 65 S.Ct. at 350. Thus, the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment. *Edelman v. Jordan, supra,* 415 U.S. at 663, 94 S.Ct. at 1355 (quoting *Great Northern Life Insurance Co. v. Read,* 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944)). *See also Trotman v. Palisades Interstate Park Commission,* 557 F.2d 35, 38 (2d Cir.1977).

The complaint in this action lists PATH, a wholly-owned subsidiary of the Port Authority, as the sole defendant. In *Port Authority Police Benevolent Association, Inc. v. Port Authority of New York and New Jersey,* 819 F.2d 413 (3d Cir.1987), *cert. denied,* ── U.S. ──, 108 S.Ct. 344, 98 L.Ed.2d 370 (1987), the Third Circuit explicitly ruled that "the Port Authority is entitled to Eleventh Amendment immuni-

ty." *See also Mineo v. Port Authority,* 779 F.2d 939, 949 (3d Cir.1985), *cert. denied,* 478 U.S. 1005, 106 S.Ct. 3297, 92 L.Ed.2d 712 (1986) (holding that the Port Authority should be treated as a state for Tenth Amendment purposes). In *Port Authority Police Benevolent Association, supra,* 819 F.2d 413, the Third Circuit dismissed an action brought pursuant to 42 U.S.C. § 1983 against the Port Authority on the ground that the Port Authority enjoys sovereign immunity.[6] The Court reasoned that under the Supreme Court test to determine the Eleventh Amendment immunity of a bi-state entity set forth in *Lake Country Estates v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979), the Port Authority enjoyed such immunity.[7] The Court concluded that, for Eleventh Amendment purposes, the Port Authority must be considered an arm or alter-ego of the state.[8]

As a wholly owned subsidiary of the Port Authority, PATH is entitled to the privileges and immunities of the Port Authority, including Eleventh Amendment immunity of a state from suit in Federal Court. *See* N.Y. Unconsolidated Laws § 6612 McKinney (1979) ("Such subsidiary corporation and any of its property, functions and activities shall have all of the privileges, immunities, tax exemptions and other exemptions of the port authority and of the port authority's property, functions

────────

**6.** Discussing immunity, the Court stated:

> First, the Port Authority's twelve commissioners are appointed by the governors of each state and confirmed by the state legislatures.... Second, the functions performed by the Port Authority—are state functions (construction, maintenance and operation of highways, bridges and tunnels).... Third, the actions of the Port Authority's commissioners are subject to veto by the governors of either state and the Authority must hand in annual reports.

*Port Authority Police Benevolent Association, Inc. v. Port Authority of New York and New Jersey,* 819 F.2d 413, 417 (3d. Cir.1987), *cert. denied,* ── U.S. ──, 108 S.Ct. 344, 98 L.Ed.2d 370 (1987).

**7.** The Third Circuit stated:

> We must determine whether such an interstate agency is an arm of the state immune from suit under the Eleventh Amendment, *See* U.S. Const. Amend. XI, or a "person" amenable to

suit under section 1983. We conclude that, under the Supreme Court's decision in *Lake Country Estates v. Tahoes Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401, ... the Port Authority is entitled to Eleventh Amendment immunity.

*Port Authority Police Benevolent Association, Inc. v. Port Authority of New York and New Jersey, supra,* 819 F.2d at 414.

**8.** The rationale for the Court's decision was that if a judgment were entered against the Port Authority that was serious enough to deplete its resources, the Authority would be able to go to the state legislatures in order to recoup the amount needed for its operating expenses. *See* N.J.Stat.Ann. 32:1–16 (West 1963); N.Y.Unconsol.Laws § 6416 (McKinney 1979) (Compact Article XV). Accordingly, a judgment against the Port Authority could have some impact on the state treasury. *Port Authority Police Benevolent Association, Inc. v. Port Authority of New York and New Jersey, supra,* 819 F.2d at 416.

and activities."). Inasmuch as the claim against PATH is for a monetary damages award that could ultimately be paid from the state treasury, New York State is the real, substantial party in interest and the Eleventh Amendment is implicated. *See Farid v. Smith*, No. 86-2007, slip op. at 4311-4312 (2d Cir. June 22, 1988) (Eleventh Amendment bars suit against state agencies if the state is the real party in interest).

Notwithstanding that an entity is an arm of the state protected by Eleventh Amendment immunity, the entity under certain circumstances can nevertheless be sued in federal court. Such a suit is permitted if Congress abrogates Eleventh Amendment protection in a federal statute, *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976), or if a state explicitly waives its immunity and consents to suit in federal court. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985) (citing *Clark v. Barnard*, 108 U.S. 436, 447, 2 S.Ct. 878, 883, 27 L.Ed. 780 (1883)). Therefore, the court must determine whether in this case the FELA permits a suit against a state in federal court or whether New York State has specifically given consent for a federal lawsuit in PATH's enabling legislation.

## II. Congressional Abrogation of Eleventh Amendment Immunity

■ The first way in which a state may be subject to suit in federal court is where Congress abrogates a state's immunity by exercising its legislative powers to enforce the substantive provisions of the Due Process Clause of the Fourteenth Amendment. *See Atascadero State Hosp. v. Scanlon, supra*, 473 U.S. at 242, 105 S.Ct. at 3147.

The Supreme Court most recently discussed the nature of such abrogation in *Welch v. Texas Department of Highways and Public Transportation*, — U.S. —, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987). *Welch* held that "Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by mak-

ing its intention unmistakably clear in the language of the statute." *Id.* at 2945 (quoting *Atascadero State Hospital v. Scanlon, supra*, 473 U.S. at 242, 105 S.Ct. at 3147 (1985)). The Court went on to point out that, with respect to the Jones Act, the waiver of immunity must be unequivocal:

> It is true that the Act extends to *"[a]ny seaman who shall suffer personal injury in the course of his employment,"* § 33 (emphasis added). But the Eleventh Amendment marks a constitutional distinction between the States and other employers of seamen. Because of the role of the States in our federal system, "[a] general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment."

*Welch v. Texas Dept. of Highways and Public Transportation, supra*, — U.S. —, 107 S.Ct. 2947, 97 L.Ed.2d 389 (1987) (quoting *Atascadero State Hospital v. Scanlon, supra*, 473 U.S. at 246, 105 S.Ct. at 3149). The Court concluded that using the phrase "any seaman" did not express in unequivocal terms that it sought to include seamen employed by the state.

The Supreme Court in Welch explicitly overruled *Parden v. Terminal Railway of Alabama Docks Department*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), the only significant case in which an employee of a state-operated railroad company was permitted to bring an action in federal court under the FELA absent unmistakably clear statutory language abrogating the state's sovereign immunity. In *Parden v. Terminal Railway of Alabama Docks Department, supra*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233, the Court reasoned that Congress evidenced an intention to abrogate Eleventh Amendment immunity by making the FELA applicable to "every common carrier by railroad while engaging in commerce between any of the several States." The Court concluded that the State of Alabama was therefore not protected by sovereign immunity.[9] *Id.* at 186,

---

9. The court held:

> We think that Congress, in making the FELA applicable to "every" common carrier by rail-

84 S.Ct. at 1209. But in *Welch,* the Supreme Court acknowledged that the holding of *Parden* had subsequently been placed in doubt: "Although our later decisions do not expressly overrule *Parden,* they leave no doubt that *Parden's* discussion of congressional intent to negate Eleventh Amendment immunity is no longer good law." *Welch v. Texas Dept. of Highways and Public Transportation, supra,* 107 S.Ct. at 2948. The Court refused to extend the reasoning of Parden to "infer that Congress in legislating pursuant to the commerce clause, which has grown to vast proportions in its applications, desired silently to deprive the States of an immunity they have long enjoyed under another part of the Constitution." *Id.* at 2948 (quoting *Employees v. Missouri Dept. of Public Health and Welfare, supra,* 411 U.S. at 285, 93 S.Ct. at 1618). Thus, to the extent that *Parden v. Terminal Railway,*

*supra,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233, is inconsistent with the requirement that an abrogation of Eleventh Amendment immunity by Congress must be expressed in unmistakably clear language, *Parden* has been overruled.[10] *Welch v. Texas Department of Highways and Public Transportation, supra,* 107 S.Ct. at 2948.[11]

Accordingly, the phrase "every common carrier by railroad" in the FELA cannot be considered an unequivocal statutory intent to include a common carrier by railroad owned by a state. This conclusion has also been reached by federal courts in New Jersey which, relying on *Welsh,* have recently dismissed several FELA claims against state-owned railroads, the Port Authority and PATH on the ground that waiver to be sued cannot be implied in the FELA.

road in interstate commerce, meant what it said. That congressional statutes regulating railroads whether they are state owned or privately owned is hardly a novel proposition....

If Congress made the judgment that, in view of the dangers of railroad work and the difficulty of recovering for personal injuries under existing rules, railroad workers in interstate commerce should be provided with the right of action created by the FELA, we should not presume to say, in the absence of express provision to the contrary, that it intended to exclude a particular group of such workers from the benefits conferred by the Act. To read a "sovereign immunity exception" into the Act would result, moreover, in a right without a remedy; it would mean that Congress made "every" interstate railroad liable in damage to injured employees but left one class of such employees—those whose employers happen to be state owned—without any effective means of enforcing that liability. We are unwilling to conclude that Congress intended so pointless and frustrating a result. We therefore read the FELA as authorizing suit in a Federal District Court against state-owned as well as privately-owned common carriers by railroad in interstate commerce. *Parden v. Terminal Railway of Alabama Docks Department,* 377 U.S. 184, 188–90, 84 S.Ct. 1207, 1210–12, 12 L.Ed.2d 233 (1964).

**10.** Even before *Welsh,* the Supreme Court had expressed the view that *Parden* was no longer good law. The Court had frequently stated that an unequivocal expression that Congress intended to override Eleventh Amendment immunity was required. *See Atascadero State Hospital v.*

*Scanlon,* 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985); *Pennhurst State School Hospital v. Halderman, supra,* 465 U.S. at 99, 104 S.Ct. at 907; *Quern v. Jordan,* 440 U.S. 332, 342–345, 99 S.Ct. 1139, 1145–47, 59 L.Ed.2d 358 (1979). The *Welch* court concluded that consent is crucial to sue the state:

Thus, despite the narrowness of the language of the Amendment, its spirit has consistently guided this Court in interpreting the reach of the federal judicial power generally, and "it has become established by repeated decisions of the court that the entire judicial power granted by the Constitution does not embrace authority to entertain a suit brought by private parties against a state without consent given ... and not even one brought by its own citizens, because of the fundamental rule of which the Amendment is but an exemplification."

*Welch v. Dept of Highways and Public Transportation,* 107 S.Ct. 2941, 2950 (1987) (quoting *Employees v. Missouri Dept. of Public Health and Welfare,* 411 U.S. 279, 291–292, 93 S.Ct. 1614, 1621–22, 36 L.Ed.2d 251 (1973)).

**11.** Although PATH is involved in interstate commerce and railroad operations, a state does not waive its Eleventh Amendment immunity by merely participating in an activity funded or regulated by Congress. *See Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Waiver will not be inferred from participation unless Congress has made waiver a condition of participation. *See Atascadero State Hosp. v. Scanlon, supra,* 473 U.S. at 242, 105 S.Ct. at 3147.

In *Fitchik v. New Jersey Transit Rail Operations,* 678 F.Supp. 465, 469 (D.N.J. 1988), the court found that New Jersey Transit Rail Operations could not be sued pursuant to the FELA, or Federal Safety Appliance Act by an employee of the railroad because the state's absolute Eleventh Amendment immunity barred such suit. *See also Leadbeater v. PATH,* No. 86–5103, slip op. (D.N.J. April 13, 1988) (applying *Welch* to dismiss suit against PATH for lack of subject matter jurisdiction); *McIntosh v. Port of Authority of New York and New Jersey and Taglietta,* No. 86–2536, slip op. at 4 (D.N.J. April 6, 1988) (applying *Welch* to dismiss eight cases pending against PATH, the Port Authority and New Jersey Transit); *Rockwell v. New Jersey Transit Rail Operations,* 682 F.Supp. 280, 283 (D.N.J.1988) (FELA does not set forth a clear and unmistakable intent on the part of Congress to abrogate a state's Eleventh Amendment immunity).

Thus, the first method of permitting a suit against a state in federal court, explicit waiver of Eleventh Amendment immunity by a Congressional statute, is not mandated by the language of the FELA.[12]

### III.  Waiver of Immunity by The State

The court must also examine the second way in which a state may be subject to suit in federal court. The principle of sovereign immunity can be limited by the state. Federal courts are free to entertain suits brought against states by individuals when the state has given its consent. If a state waives its Eleventh Amendment immunity, the suit is no longer barred. *See Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

■ The waiver of immunity, however, must be explicit and a federal suit cannot be based on a state's general consent to be sued in its own state courts. Waiver will be found only where it is stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable interpretation. *Edelman v. Jordan, supra,* 415 U.S. at 651, 94 S.Ct. at 1347 (quoting *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 29 S.Ct. 458, 53 L.Ed. 742 (1909)). *See also Barrett v. United States,* 853 F.2d 124, 129–130 (2d Cir.1988); *Minotti v. Lensink,* 798 F.2d 607, 610 (2d Cir. 1986), *cert. denied,* — U.S. ——, 107 S.Ct. 2484, 96 L.Ed.2d 376 (1987).

■ The "unmistakably clear language" required for a waiver of Eleventh Amendment immunity is not found in the charter of PATH. The consent to suit provision of the Port Authority statute essentially empowers the Authority merely to sue and be sued.[13] In *Pennhurst State School &*

---

**12.** Although not raised by the parties, it is clear that neither the language of the SAA nor the BIA expressly abrogate Eleventh Amendment Immunity. *See McKenna v. Washington Metropolitan Area Transit Authority,* 829 F.2d 186, 188 (D.C.Cir.1987).

**13.** The Port Authority of New York and New Jersey's statutory consent to suit provides:

Upon the concurrence of the state of New Jersey in accordance with section twelve § 7117 hereof, the states of New York and New Jersey consent to suits, actions or proceedings of any form or nature at law, in equity or otherwise (including proceedings to enforce arbitration agreements) against the Port of New York Authority (hereinafter referred to as the "Port Authority"), and to appeals therefrom and reviews thereof, except as hereinafter provided in sections two through five, inclusive, hereof.

N.Y.Unconsol.Law § 7101 (McKinney 1979). N.J.Stat.Ann. § 32:1–157 (West 1963).

Prior to the promulgation of § 7101, the Port Authority was considered entirely immune from suit. *See Port Authority Police Benevolent Association, Inc. v. Port Authority of New York and New Jersey, supra,* 819 F.2d at 418.

The Port Authority of New Jersey and New York's venue statutes provide:

The foregoing consent is granted upon the condition that venue in any suit, action or proceeding against the Port Authority shall be laid within a county or a judicial district, established by one of said states or by the United States, and situated wholly or partially within the port of New York district. The Port Authority shall be deemed to be resident of each such county or judicial district for the purpose of such suits, actions or proceedings. Although the Port Authority is engaged in the performance of governmental functions, the said two states consent to liability on the part of the Port Authority in such suits, actions or proceedings for tortious acts committed by it and its agents to the same extent as though it were a private corporation.

*Hosp. v. Halderman, supra,* 465 U.S. 89, 104 S.Ct. 900, the Court declared that "[a] state's constitutional interest in immunity encompasses not only *whether* it may be sued, but *where* it may be sued." *Id.* at 99, 104 S.Ct. at 907. The above waiver does not meet the "unmistakably clear language" requirement because "the Supreme Court has made it clear that the particular provision relied on must indicate the state's specific intention to be sued in federal court." *Atascadero State Hosp., supra,* 473 U.S. at 241, 105 S.Ct. at 3146.

A number of federal courts have found that the use of a similar sue and be sued provision cannot be construed as waiving a State's Eleventh Amendment immunity from suits in federal court. In *Trotman v. The Palisades Interstate Park Commission, supra,* 557 F.2d at 39, the Second Circuit interpreted the meaning of a sue and be sued clause in an interstate compact. Concluding that the interpretation of the clause would turn on federal law, the Court held that "we fail to perceive any reason why a bi-state commission cannot, when sued in federal court, enjoy the Eleventh Amendment immunity of its signatory states." *Id.* at 38. The court ruled that sue and sued language in the Palisades Interstate Park Commission enabling statute could not be interpreted as giving individuals consent to sue the Commission in federal court. *See also Rockwell v. New Jersey Transit Rail Operations, supra,* 682 F.Supp. at 284 (New Jersey Transit statute conferring a capacity to be sued does not constitute a clear and unmistakable waiver of sovereign immunity).

Similarly, in *Port Authority Police Benevolent Association, Inc. v. Port Authority of New York and New Jersey, supra,* 819 F.2d at 418, the Third Circuit rejected the contention that language in the Port Authority statute constituting the capacity to sue and be sued abrogated the Port Authority's Eleventh Amendment immunity. *Id.* (citing *Florida Dept. of Health and Rehabilitative Serv. v. Florida Nursing Home Ass'n,* 450 U.S. 147, 150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981)).

District courts both in New York and New Jersey have relied on *Port Authority Police Benevolent Association, Inc., supra,* to dismiss actions against the Port Authority and against PATH based on their Eleventh Amendment immunity from suit in federal court. *See e.g., O'Donnell v. Port Authority of New York and New Jersey,* 693 F.Supp. 1427, 1429 (S.D.N.Y. 1987) (under the Eleventh Amendment the Port Authority is not amenable to suit); *Borough of Fort Lee v. The Port Authority of New York and New Jersey,* No. 87 Civ. 1238, slip op. at (D.N.J. March 14, 1988) [available on Westlaw, 1988 WL 24146] (consent statutes of Port Authority do not constitute an unequivocal waiver of immunity).[14]

This Court believes that PATH should be afforded Eleventh Amendment immunity. PATH is an alter-ego of the States of New York and New Jersey and, in the absence of an unequivocal waiver specifically applicable to federal court jurisdiction, the court declines to find that PATH has waived its constitutional immunity.[15]

N.Y.Unconsol.Law § 7106 (McKinney 1979). N.J.Stat.Ann. § 32:1–162 (West 1963).

**14.** The only case which can be interpreted as reaching a contrary conclusion is *Raysor v. Port Authority of New York and New Jersey,* 768 F.2d 34 (2d Cir.1985), *cert. denied,* 475 U.S. 1027, 106 S.Ct. 1227, 89 L.Ed.2d 337 (1986). In *Raysor,* the Second Circuit permitted § 1983 actions for false arrest and malicious prosecution to proceed on a theory of *respondeat superior* against the Port Authority since the Court found that New York and New Jersey had waived the Port Authority's immunity from such suits. *Id.* at 38. The Court believes that *Raysor* is not pertinent to this case because the question of Eleventh Amendment immunity and the need for an ex-

plicit waiver to bring suit in federal court appears not to have been directly addressed in *Raysor. See O'Donnell v. Port Authority of New York and New Jersey,* No. 84 Civ. 8188, slip op. at 6 (S.D.N.Y. September 3, 1987). Moreover, all recent cases have held that the Port Authority is not amenable to suit in federal court.

**15.** Finally, plaintiff's argument that the dismissal of the action will deny plaintiff the equal protection of the laws and ignore the supremacy of the Federal Railroad Statutes is without merit. In *Ex parte State of New York,* 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057 (1921), and its progeny, it was clearly established that allowing Eleventh Amendment immunity for state owned

42

## CONCLUSION

The Court finds that PATH, a wholly-owned subsidiary of the Port Authority of New York and New Jersey, is a state entity. The FELA does not abrogate PATH's sovereign immunity and PATH has not unequivocally consented to suit in federal court through its waiver statute. Therefore, PATH enjoys Eleventh Amendment immunity which deprives this court of subject matter jurisdiction to entertain the instant claim. Accordingly, defendant PATH's motion for judgment on the pleadings is granted and the action is dismissed.

It is so ordered.

businesses does not violate the equal protection of the individuals seeking to sue the state. *See* *Rockwell v. New Jersey Transit Rail Operations,* 682 F.Supp. 280, 284 (D.N.J.1988).