OPINION OF THE COURT
Meyer, J.
The transfer of $190 million from the State Insurance Fund to the general fund of the State does not violate the *372 Federal or State Constitution. The order of the Appellate Division should, therefore, be affirmed, without costs.
I
The purpose of the present action is to obtain judgment (1) declaring unconstitutional section 92 (2) of chapter 55 of the Laws of 1982, which directed the State Insurance Fund (SIF) to transfer to the State’s general fund $190 million by March 1, 1983, and (2) requiring the return of that sum plus interest from March 1, 1983 to the SIF. The SIF exists “for the purpose of insuring employers against liability for personal injuries or death sustained by their employees [worker’s compensation liability], including liability * * * imposed upon employers by reason of a suit or claim brought against the employer by another to recover the amount of damages obtained from such other by an employee of the employer for injuries or in case of death by his dependents for death sustained by such employee arising out of and in the course of his employment [so-called IB coverage]” (Workers’ Compensation Law § 76 [1]; bracketed material added).
Section 86 of chapter 55 added a new section 87-f to the Workers’ Compensation Law which in its subdivision 1 establishes the mechanism for annual so-called “dry” appropriations to the SIF of $190 million and provides in its subdivision 2 that any appropriation thus made “shall be deemed an admitted asset of the state insurance fund” and that any transfer of moneys from the SIF to the State’s general fund “is deemed a proper and prudent legal undertaking for any state officer with the responsibility for the custody or the investment of the assets of the fund”. Subdivision 1 requires inclusion in each year’s budget bill for the next fiscal year of $190 million for the SIF and provides that if in any year the Governor fails to do so or the Legislature fails to appropriate the budgeted amount, the amount appropriated for the preceding fiscal year “shall be payable forthwith to the fund on the first day of July of such year”. Section 93 of chapter 55 requires that any action relative to the foregoing be brought against the State and holds harmles s every State officer responsible for the custody or investment of the SIF, as well as persons employed by or who advise such an officer, from liability by reason of the transfer directed or othe r provisions of the act. Chapter 404 of the Laws of 1982 made the necessary $190 million appropriation to the SIF “for the purpose of maintaining the solvency” of the fund, but provided “that no expenditure may be made from this amount if other assets of such fund not part of reserves for claims or losses are available,” *373 and required issuance and filing of a certificate of approval by the Director of the Division of the Budget before expenditure from the appropriation can be made. Provisions similar to those of chapter 404 have been contained in the appropriation bills for 1983 (ch 50) and 1984 (ch 50) under the heading “Insurance and Securities Funds Reserve Guarantee.”
The plaintiffs are two nonprofit corporations and a commercial corporation who are employers insured by the SIF.[1] Defendants are the SIF, its Commissioners, its Supervising Actuary (SIF-defendants), the State Comptroller, the Commissioner of Taxation and Finance and the State (State-defendants). The complaint in separate causes of action asks that chapter 55 be declared unconstitutional because it (1) impairs contractual obligations in violation of article I, § 10 (1) of the Federal Constitution; (2) constitutes a deprivation of property without due process and a taking without just compensation in violation of the 5th Amendment of the Federal Constitution and article I, §§ 6 and 7 of the New York Constitution; (3) constitutes an improper intrusion by the Legislature upon discretionary powers of State officials of the executive branch in violation of article III, § 1, and article IV, § 1 of the State Constitution; (4) creates a loan of State credit in violation of article VII, § 8 of the State Constitution; (5) creates a debt without providing that it be evidenced by a note in violation of article VII, § 9 of the State Constitution; (6) creates a debt without voter approval in violation of article VII, § 11 of the State Constitution; (7) constitutes an appropriation which is not required to be expended within two years of passage and is fixed by reference to other laws in violation of article VII, § 7 of the State Constitution; and (8) in depriving policyholders of the income that otherwise would have been earned constitutes a de facto tax on employers in violation of article III of the State Constitution. The State-defendants’ answer asserts affirmative defenses as to each cause of action, denies that the SIF is independent of the State and alleges that its reserves and investments are the property of the State. The SIF-defendants’ answer admits the issuance of policies to the plaintiffs and that absent transfer of $190 million to the general fund of the State income would be earned by the SIF, but otherwise denies knowledge and information and refers the court to the various constitutional and statutory provisions *374 involved. They also cross-claim for judgment declaring whether chapters 55 and 404 are unconstitutional.
Plaintiffs moved for summary judgment and the SIF-defendants not only joined in and supported that motion[2] but also argued, as do plaintiffs, that SIF funds are “fiduciary funds” within the meaning of the State Finance Law § 70 and, therefore, are property of the policyholders rather than State funds?. The State-defendants cross-moved for summary judgment. Special Term, in a thoughtful opinion (117 Misc 2d 178), denied plaintiffs’ motion, granted the State-defendants’ cross motion and entered judgment declaring the provisions of chapters 55 and 404 relating to the $190 million transfer by the SIF constitutional. The Appellate Division, in an exhaustive opinion (102 AD2d 367), affirmed, one Justice dissenting on the ground t hat those insured by the Fund have a property interest in its surplus because “the Fund operates as a mutual insurance pool” (102 AD2d, at p 385). We agree with the result and much of the opinions written below, and write primarily to clarify the status of the Fund as a State agency for all of whose liabilities the State is responsible, rather than a mutual insurance pool. That conclusion, explicated in part II of this opinion, because it negates the conception of a property or contractual interest of Fund policyholders in its surplus, answers the contract impairment, due process, just compensation and de facto tax contentions advanced by plaintiffs and the SIF-defendants. For other reasons set forth in part III below, we conclude further that the statutes in question violate none of the other State constitutional provisions on which plaintiffs and the SIF-defendants rely.
II
Nothing in article 6 of the Workers’ Compensation Law expressly establishes the SIF as a mutual insurance organization. A mutual insurance company is organized and operated for the benefit of its policyholders who are by virtue of their policies members of the company (2 Couch, Insurance § 19.14 [2d ed]). It is run by a board of directors elected by the members (Insurance *375 Law § 56); its members are, absent approval by the Superintendent of Insurance of its issuance of nonassessable policies, subject to contingent mutual liability for assessment should the assets of the company be insufficient to meet liabilities (Insurance Law § 57; 30 NY Jur, Insurance, §§ 791, 792), and are entitled to dividends from surplus as may be declared by the board of directors (Insurance Law §§ 58,197, 345). In some such companies the payment of annual dividends is within the discretion of the directors (Insurance Law §§ 57, 318, 323, 346); in others, annual payment of dividends is mandated by statute (Insurance Law § 216). When a dividend is in fact declared, it must be equitably apportioned among the policyholder-members, its purpose and effect being to reduce pro tanto the cost of insurance to the policyholder (Kern v John Hancock Mut. Life Ins. Co., 8 NY2d 833, affg 8 AD2d 256, 259; Rhine v New York Life Ins. Co., 273 NY 1, 13), but with the possible exception of companies whose annual dividends are mandated by statute, the right to receive a dividend when declared creates no trust or property interest of the policyholder in the surplus (see, Grobe v Erie County Mut. Ins. Co., 169 NY 613, affg 39 App Div 183; Uhlman v New York Life Ins. Co., 109 NY 421; Fidelity & Cas. Co. v Metropolitan Life Ins. Co., 42 Misc 2d 616).
When one turns to the provisions governing the SIF, it is at once apparent that there are more dissimilarities than likenesses between it and a mutual insurance company. The only reference to mutual companies in article 6 of the Workers’ Compensation Law, which governs the SIF, is in section 99, which requires the Commissioners to report to the Superintendent of Insurance “at the same time and in the same manner as is required from mutual employer’s liability and workmen^ [worker’s] compensation corporations”. But unlike mutual insurance companies, the SIF was created and exists as a State agency within the Department of Labor (Workers’ Compensation Law § 76 [l]),[3] its policyholders are not members and have no vote or say in administration, the Fund being administered by commissioners appointed by the Governor with the advice and consent of the Senate (id., § 77) and the Commissioner of Taxation and Finance being custodian of the Fund (id., § 85). Policyholders in the SIF not only have no responsibility to contribute to losses,[4] as do some mutual insureds, but also are protected, as no other *376 mutual insured is, from all claims predicated on employee injury even if the SIF, as a fund, were to become insolvent. This results from the status of the Fund as a State agency, from the express statutory release of fund-insured-employers from liability, and from the deletion, by chapter 615 of the Laws of 1922, from the provision which is now Workers’ Compensation Law § 76 (1) of the sentence included in the original enactment which read: “Such fund shall be administered by the commission* ***[5] without liability on the part of the state beyond the amount of such fund.” The liability thus accepted by the State extends, moreover, not only to direct claims of employees but also to LB coverage of claims against an employer by a third party to recover damages awarded a policyholder’s employee against such third party (Cardinal v State of New York, 304 NY 400, 405, 414-416).[6] Moreover, dividends to policyholders are discretionary, not mandatory (Workers’ Compensation Law § 80: “there may be credited or paid to each individual member” [emphasis supplied]).
Plaintiffs argue that the provisions of section 76 (1) descriptive of the Fund[7] indicate a legislative intent that policyholders have a property interest in its surplus. The answer is that the statement of what the Fund shall consist of and what expenses may be paid from it simply do not deal with what is to *377 be done with surplus, and that it is equally consistent with those descriptive provisions, when considered together with the facts that dividends are discretionary and that the State, and only the State, is responsible for payment of awards resulting from employee injury or death, either through its agency, the Fund, or from other State moneys, that such surplus as may exist after payment of discretionary dividends belongs to the State, not to policyholders. The surplus being State money the State could have simply taken it with no strings attached. That it has seen fit instead to assure the solvency of the Fund through the dry appropriation mechanism established by Workers’ Compensation Law § 87-f is not inconsistent with that conclusion. It is rather a pledge or earnest of the State’s intention to carry out the obligation which it has borne since the “without liability” sentence was deleted from Workers’ Compensation Law § 76 (1) in 1922.
What has been said so far establishes that State Insurance Fund policyholders have no property interest in the surplus of the Fund, short of the actual declaration of a dividend by the Commissioners. Plaintiffs’ impairment of contract argument is largely answered by that conclusion, but we note further our agreement with the Appellate Division (102 AD2d, at p 378 ff) that nothing in the statutory provisions so far referred to or in section 89’s direction that “premiums in the state fund shall be fixed at the lowest possible rates consistent with the maintenance of a solvent fund and of reasonable reserves and surplus” rises to the level of language “ ‘susceptible of no other reasonable construction’ than that a contract was intended” (Pennsylvania R.R. Co. v State of New York, 11 NY2d 504, 511). Likewise there being neither property nor contract interest of policyholders in surplus, the effect upon them of loss to the SIF of interest on the $190 million transferred cannot constitute a de facto tax in violation of article III of the New York Constitution.
Ill
The remaining State constitutional grounds can be more summarily disposed of. By transferring $190 million from one State pocket (the SIF) to another (State general funds), the State has relieved the Fund’s Commissioners of the necessity of exercising investment discretion with respect to part of the funds previously entrusted to them, but has done so in the exercise of its prerogative as owner of the surplus funds and, therefore, without infringing upon separation of powers. Nor by doing so has the State improperly loaned its credit to itself, or created a debt to itself. Rather it has, as already noted, simply given a *378 pledge or earnest of its intention to carry out its obligations with respect to Fund policyholders should that become necessary.
Finally, we perceive no violation of the provisions of article VII, § 7 of the State Constitution governing appropriation bills.[8] Workers’ Compensation Law § 87-f (1), which establishes the mechanism, itself makes no appropriation. The appropriation:? have been made in each year by separate act (L 1982, ch 404; L 1983, ch 50; L 1984, ch 50), each of which, without reference to any other law, fixes the amount appropriated and specifies the purpose to which the sum appropriated is to be applied. That the moneys appropriated are not available for expenditure without approval of the Director of the Division of the Budget and tha t no expenditure may be made of the funds if other assets of the SIF not part of reserves for claims or losses are available does no violence to the constitutional inhibition. And payment within two years next after passage of the appropriation act is assured by the provision of section 87-f (1) that requires payment of the amount appropriated in any given fiscal year if the Governor fails to budget or the Legislature fails to appropriate such art amount for the succeeding fiscal year. Because such payment must be made on July 1 of the succeeding fiscal year, payment, will be made, if at all, within the required two-year period.
For the foregoing reasons, the order of the Appellate Division should be affirmed, without costs.
Chief Judge Wachtler and Judges Jasen, Simons and Kaye: concur; Judge Alexander taking no part.
Order affirmed, without costs.

. Unlike the claim advanced in American Ins. Assn. v Chu (64 NY2d 379 [decided herewith]), the claim presented by plaintiffs herein is not premature, for the transfer of $190 million from the SIF to the State will reduce by some $134 million over the next five years accretions to the Fund through interest, in which plaintiffs claim a present contract and property right.

. The State-defendants argue that, the SIF being a State agency, the SIF-defendants have no standing to challenge constitutionality of the statute. The Commissioners are, however, required by Workers’ Compensation Law § 77 to be policyholders insured in the SIF and to take a constitutional oath of ofiice. Thus, notwithstanding the immunity and indemnity provisions of section 93 of chapter 55 of the Laws of 1982, they have standing (Board of Educ. v Allen, 20 NY2d 109, affd 33x US 236).

. We agree, for the reasons expounded by the Appellate Division (102 AD2d, at pp 372-374), that the SIF is a State agency. For the history of its creation, see, Sadigur v State of New York (173 Misc 645).

. Workers’ Compensation Law § 53 provides that: “An employer securing the payment of compensation by contributing premiums to the state fund shall *376 thereby become relieved from all liability for personal injuries or death sustained by his employees, and the persons entitled to compensation under this chapter shall have recourse therefor only to the state fund and not to the employer. An employer shall not otherwise be relieved from the liability for compensation prescribed by this chapter except by the payment thereof by himself or his insurance carrier.”

. The reference is to the Workers’ Compensation Commission, as it is presently designated (see, L 1913, ch 816, § 3 [2]).

. Though Cardinal held only the Fund liable to the policyholder, the case presented no issue concerning liability of the State as distinct from the SIF. Nor, in light of the broad language of Workers’ Compensation Law § 53 (quoted in n 4, supra) relieving an employer insured by the SIF “from all liability for personal injuries or death sustained by his employees,” do we attach significance to the fact that Workers’ Compensation Law § 76 (1) uses more explicit language as to third-party claims. Matter of Consolidated Mut. Ins. Co. (Arcade Cleaning Contrs.) (60 NY2d 1), which dealt with the security fund under Insurance Law § 334, is not to the contrary.

. The last two sentences of the subdivision read: “Such fund shall consist of all premiums received and paid into the fund, of property and securities acquired by and through the use of moneys belonging to the fund and of interest earned upon moneys belonging to the fund and deposited or invested as herein provided. Such fund shall be applicable to the payment of losses sustained on account of insurance, to the payment of expenses in the manner provided in this chapter and to the payment of premiums for reinsurance in any insurance corporation of the whole or any part of any policy obligations;’

. The section reads: “No money shall ever be paid out of the state treasury or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law; nor unless such payment be made within two years next after the passage of such appropriation act; and every such law making a new appropriation or continuing or reviving an appropriation, shall distinctly specify the sum appropriated, and the object or purpose to which it is to be applied; and it shall not be sufficient for such law to refer to any other law to fix such sum.”