**The MARLEY COMPANY and Employers Insurance of Wausau, Plaintiffs,**

v.

**BOSTON OLD COLONY INSURANCE COMPANY, Defendant.**

**BOSTON OLD COLONY INSURANCE COMPANY, Third–Party Plaintiff,**

v.

**The STATE INSURANCE FUND, Third–Party Defendant.**

**No. 87 CIV. 6691 (SWK).**

United States District Court, S.D. New York.

April 21, 1989.

White, Fleischner & Fino, New York City by Denis M. Wade, for plaintiffs.

Lester, Schwab, Katz & Dwyer, New York City by Saul Goldstein, for defendant and third-party plaintiff.

Kroll & Tract, New York City by Raymond A. Green, Leigh R. Isaacs, Alvin P. Bluthman, for third-party defendant.

MEMORANDUM OPINION
AND ORDER

KRAM, District Judge.

Before this Court is the motion of the State Insurance Fund (the "SIF") to dismiss the third-party action for lack of subject matter jurisdiction on the ground that it is barred by the Eleventh Amendment of the United States Constitution. The SIF argues that the Eleventh Amendment bars the action against it, as it is an "alter ego" of the State and has not waived its Elev-

enth Amendment immunity. Alternatively, the SIF contends that the doctrine of sovereign immunity also bars this action in federal court. The third-party plaintiff and plaintiff each oppose this motion, arguing that the SIF is not an "alter ego" of the state because, *inter alia*, its funds are separate and any judgments against it are satisfied with its own segregated revenues. This Court has considered the SIF's statutory powers and obligations, as well as the relationship of its fund to other state government funds, and concludes that the SIF is an alter ego of the State of New York. As such, it is immune from suit in federal court under the Eleventh Amendment, and the third-party action in this case is dismissed.[1]

## BACKGROUND

Plaintiff brought this indemnity claim following a state court judgment in a personal injury action. In the state action, the court found the Marley Company and Traynor and Hanson, the company that employed the worker suing for personal injuries in the state proceeding, liable as joint tortfeasors. In this action, the plaintiffs seek indemnity from Boston Old Colony Insurance based on a general liability policy it wrote for Traynor and Hanson. Boston Old Colony thereafter brought this third-party action against the SIF, asserting that the SIF had issued a policy of Workers' Compensation Insurance to Traynor & Hanson, and that the SIF is obligated to indemnify Marley Company on behalf of Traynor & Hanson.

## DISCUSSION

■ The Eleventh Amendment of the United States Constitution bars actions in federal court where the "real, substantial party in interest" named as a defendant is the state. *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). The state is the real party in interest whenever the defendant can be considered an "alter ego" of the state. *See, e.g., Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974). The Second Circuit has noted that "the state is usually the substantial party in interest when satisfaction of a judgment in a suit for money damages would require payment from the state treasury." *Fay v. South Colonie Cent. School Dist.,* 802 F.2d 21, 27 (2d Cir.1986) (citing *Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979) and *McClary v. O'Hare,* 786 F.2d 83, 89 (2d Cir.1986)).

Other secondary considerations are "whether the entity sued is performing a governmental or proprietary function, whether it has been separately incorporated, whether it has the power to sue and be sued and enter into contracts, the degree of autonomy over its operations, and whether the state has immunized itself from responsibility for the agency's operations." *Fitzpatrick v. Bitzer,* 519 F.2d 559, 565 (2d Cir.1975), *affirmed in part, reversed in part,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed. 2d 614 (1976) (the Court did not dispute factors, but held that the Civil Rights Act had unequivocally abrogated Eleventh Amendment immunity). The determination of whether Eleventh Amendment immunity exists is a determination of federal, not state law, but the "answer depends at least in part upon the nature of the entity created by state law." *Levitt v. State of Maryland Deposit Insurance Fund Corp.,* 643 F.Supp. 1485, 1490 (quoting *Mount Healthy City School District v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572–73, 50 L.Ed. 2d 471 (1977)).

### Source of Judgments Against the SIF

At issue here is whether the SIF, which is a New York state agency that derives its funds from insurance premiums, is the "alter ego" of New York state under the Eleventh Amendment. It is incumbent on this Court to decide whether a money judgment against the SIF would be paid from state funds. *Edelman, supra,* 415 U.S. at

---

1. This determination is consistent with the opinion, issued from the bench, of Judge Costantino of the Eastern District of New York, directing dismissal of an action against the SIF, as "the Eleventh Amendment is the one that controls." *Young Sun Lee v. State Insurance Company,* No. 84 Civ. 4060 (MAC), transcript at 6 (E.D.N.Y. January 11, 1985).

663, 94 S.Ct. at 1355–56. The SIF earns its money from the premiums it collects from private employers and the state as employer, as well as from investment income. Workers Compensation Law § 76. The Commissioner of Taxation and Finance acts as the custodian of the fund, responsible for its investment, while the Legislature has mandated certain investments in the obligations of certain state and local entities.[2] The Commissioner of Taxation and Finance also has the authority to withdraw excess funds from the SIF for transfer to the other state funds to meet current obligations. *Id.* at § 85. By affidavit, the third-party defendant asserted that $515 million has been transferred from it to the general fund as of 1986; similarly, $300 million has been transferred from the SIF to the general fund and the capital projects fund since 1986. *See* Affidavit of Albert C. Todaro ¶ 10. The SIF's administrative expenses are subject to annual Legislative approval, and all such expenses must be paid from the funds of the SIF. *Id.* at § 88. While much of the SIF's revenue is derived from the premiums paid by private employers, and it is run much like a private insurance company, its funds have been and may continue to be commingled with those of other state funds.

This Court recently found that the Port Authority Trans–Hudson Corporation ("PATH"), as a wholly owned subsidiary of the Port Authority, is an arm or alter ego of the state. *Feeney v. Port Authority Trans–Hudson*, 693 F.Supp. 34, 37 (S.D.N.Y.1988). That conclusion was based in part on the Third Circuit's decision that the Port Authority is an alter ego of states of New York and New Jersey under the analysis for bi-state entities set forth in *Lake Country Estates v. Tahoe Regional Planning Agency*, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979). *See Port Authority Benevolent Association v. Port Authority of New York and New Jersey*, 819 F.2d 413 (3d Cir.), *cert. denied,* —— U.S. ——, 108 U.S. 344, 98 L.Ed.2d 370 (1987). One of the *Lake Country Estates* factors analyzed by

the Third Circuit was whether or not judgments against the Authority would be binding on either of the states. The Third Circuit concluded that "[g]iven the solvency and size of the General Reserve Fund, it is unlikely that the Authority would have to go to the state to get payment for any liabilities issued against it." *Port Authority Benevolent Association, supra,* 819 F.2d at 416. The court, however, recognized the statutory liability of the states for any revenue deficiency of the Port Authority, stating:

> Indirectly, then, a judgment against the Authority could have some impact on the state treasury. Although the fiscal health presently enjoyed by the Port Authority renders this conclusion purely theoretical, Compact Article XV [the agreement creating the Port Authority] nevertheless makes the states' intentions towards the Authority crystal clear: if the Authority is ever in need of financial support, the states will be there to provide it.

*Port Authority Police Ben. Ass'n,* 819 F.2d at 416. In the present action, as in the *Port Authority* case, the state is ultimately liable in case the fund, although legally separate, was unable to satisfy a liability. As the Third Circuit substantially relied on the ultimate liability of the states, so does this Court rely on the ultimate liability of New York.

The court in *Bowen v. Hackett,* 387 F.Supp. 1212 (D.R.I.1975) came to the opposite conclusion in a case involving the Rhode Island retirement fund. *Id.* The *Bowen* decision, however, actually supports the application of the Eleventh Amendment to the SIF, as the fund in *Bowen,* unlike the SIF, the state had no legal duty to replenish the fund or pay a judgment against the fund if the fund ever became delinquent. On the contrary, the State of New York has an ultimate obligation to satisfy any liability against the SIF. In *Methodist Hospital v. State Ins. Fund,* 64 N.Y.2d 365, 486 N.Y.S.2d 905, 476 N.E.2d

---

**2.** The SIF is obligated to make considerable investments in the Municipal Assistance Corporation of the City of New York, *see* Workers' Compensation Law § 87–a, the City of Yonkers, *id.* § 87–b, as well as in several public benefit corporations, *id.* § 87–c.

304 (1985), the New York Court of Appeals found that the state had not immunized itself from liability arising from the SIF. According to New York's highest court:

Policyholders in the SIF not only have no responsibility to contribute to losses as do some mutual insureds, but also are protected, as no other mutual insured is, from all claims predicated on employee injury even if the SIF, as a fund, were, to become insolvent.

*Methodist Hospital, supra,* 64 N.Y.2d at 375–76, 486 N.Y.S.2d at 910, 476 N.E.2d at 309 (policy holders have no property interest in Fund surplus, as it is "State money"). Moreover, the State at one time did clearly limit its liability for the SIF, providing that "[s]uch fund shall be administered by the commission without liability on the part of the State beyond the amount of such fund." *Id.* The elimination of this express limitation on liability was found by the Court of Appeals to be an unmistakable acceptance by the state of such liability. *Id.* Although the SIF is comparable in many respects to a private insurance company, its relationship with the state makes its liabilities the liabilities of the state, enforceable in the Court of Claims.

Secondary Considerations

The SIF satisfies most of the secondary considerations under *Fitzpatrick*. It is not separately incorporated, but instead operates as an agency of the state within the New York State Department of Labor. *See* Workers Compensation Law § 76(1); *see, e.g., Commissioners of State Insurance Fund v. Lapidus,* 182 Misc. 368, 50 N.Y.S.2d 589, 590 (N.Y.Sup.Ct.1943) (commissioners of the SIF cannot be examined before trial if action is brought in Supreme Court, instead of Court of Claims, as the SIF is an agency of the state, not a public corporation). Moreover, the SIF's power to sue and be sued in its own name is limited. The state is ultimately liable for damages caused by the SIF, as the state would be responsible for the liability of any agency. *See, e.g., Sadigur v. State,* 173 Misc. 645,

18 N.Y.S.2d 356, 357–61 (N.Y.Ct.Claims 1940) (SIF is integral part of Department of Labor, not a separate governmental unit, thus actions against it should be brought in Court of Claims). Furthermore, actions against the SIF, with the exception of certain real estate matters, must be brought against the state, not the SIF, and cannot be brought in any state court other than the New York Court of Claims. *See, e.g., Methodist Hospital, supra,* 486 N.Y.S. 2d at 910–11, 476 N.E.2d at 308–10; *Cardinal v. State,* 304 N.Y. 400, 402, 107 N.E.2d 569, *motion denied,* 304 N.Y. 732, 108 N.E. 2d 400, *motion denied,* 304 N.Y. 875, 109 N.E.2d 885 (1952), *cert. denied,* 345 U.S. 918, 73 S.Ct. 729, 97 L.Ed. 1351 (1953); *Skakandy v. State of New York,* 274 A.D. 153, 80 N.Y.S.2d 849 (3d Dept.1948), *aff'd,* 298 N.Y. 886, 84 N.E.2d 804 (1949).

The SIF also was created to satisfy a government function necessitated by the Workers Compensation Law. The SIF was created for the "purpose of insuring employers against liability for personal injuries or death sustained by their employees . . . arising out of and in the course of his employment. . . . *Id.* "The Workmen's Compensation Law blueprints the administration of an indubitable governmental function, and . . . the fund is a primary and essential actor in such administration. . . ." *Matter of State Insurance Fund v. Boyland,* 282 A.D. 516, 125 N.Y.S.2d 169, 175 (1st Dept.1953), *aff'd,* 309 N.Y. 1009, 133 N.E.2d 457 (1956). Unlike private insurance companies, the SIF cannot reject applicants based upon their own underwriting criteria, but must provide insurance to all employers. *See* Practice Commentaries to Workers' Compensation Law § 76 (McKinney's 1989).

Although a separate fund, the SIF is clearly commingled from time to time with other state funds.[3] The SIF is also an agency of the state created to satisfy a governmental function. Furthermore, this Court also adopts the liability analysis of the *Methodist Hospital* court and deter-

---

**3.** The state transferred nearly fifty million dollars in 1985, and nearly sixty million dollars in 1986, from its general fund to the SIF to cover certain administrative expenses. *See* Todaro Affidavit at ¶ 5.

mines that a judgment against the SIF is, in effect, a judgment to be satisfied ultimately by the state treasury.

Waiver

■ In the present action, the third-party plaintiff contends that the SIF waived its immunity as an alter ego of the state by its willing participation in four actions in this Circuit. *See* Memorandum of Boston Old Colony at 10–11. A state may waive its eleventh amendment immunity, only if it does so clearly and explicitly. *Edelman, supra,* 415 U.S. at 673, 94 S.Ct. at 1360–61 (1974) (doctrine of constructive or implied consent does not apply in Eleventh Amendment context); *Feeney, supra,* 693 F.Supp. at 40. Furthermore, a "state's constitutional interest in immunity encompasses not only *whether* it can be sued, but *where* it may be sued." *Feeney, supra,* 693 F.Supp. at 41 (quoting *Pennhurst, supra,* 465 U.S. at 99, 104 S.Ct. at 907). Any waiver must therefore clearly indicate the state's specific intention to be sued in federal court. *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 241, 105 S.Ct. 3142, 3146–47, 87 L.Ed.2d 171 (1985)). This Court finds no factual basis for a clear, unequivocal and intended waiver of the SIF's right to assert the Eleventh Amendment's jurisdictional bar.

Conclusion

For the above-state reasons, the third-party action against the State Insurance Fund is dismissed for lack of subject matter jurisdiction.

SO ORDERED.