86 F.3d 15
 Eugene LIPOFSKY, Plaintiff-Appellant,
v.
Robert STEINGUT, Martin Mankowitz, Carl Sachs, John Fedor,
Carl Sendar, A. Franklin Mahoney, New York State
Workers' Compensation Board, Defendants,
The State Insurance Fund, Defendant-Appellee.
 No. 1747, Docket 95-9303.
 United States Court of Appeals,
Second Circuit.
 Argued May 22, 1996.
Decided June 4, 1996.
 
 Eugene Lipofsky, North Miami, Florida, Plaintiff-Appellant pro se.
 Julie S. Mereson, Assistant Attorney General, Albany, New York (Dennis C. Vacco, Attorney General of the State of New York, Peter H. Schiff, Deputy Solicitor General, Albany, New York, on the brief), for Defendant-Appellee.
 Before: KEARSE, WINTER, and CALABRESI, Circuit Judges.
 PER CURIAM:
 
 
 1
 Plaintiff Eugene Lipofsky appeals from a judgment of the United States District Court for the Northern District of New York, Con. G. Cholakis, Judge, dismissing his complaint brought under, inter alia, 42 U.S.C. § 1983 (1994) for approximately $6 million in damages from defendant The State Insurance Fund ("SIF") for nonpayment of a 1979 workers' compensation award. The district court dismissed the complaint pursuant to Fed.R.Civ.P. 12(b)(6) on the ground that SIF is a New York State ("State") agency entitled, under the Eleventh Amendment to the Constitution, to immunity from suit in federal court. Lipofsky challenges this ruling on appeal. For the reasons below, we affirm the judgment.
 
 
 2
 Following procedural events that are not relevant to this appeal, the only claim before the court below was that SIF, in violation of principles of equal protection and due process, has prevented Lipofsky from collecting compensation awarded to him in 1979 by the New York State Workers' Compensation Board. The complaint demanded only monetary relief, to wit, damages of some $6 million. SIF moved to dismiss on the ground, inter alia, that it is a State agency and thus has Eleventh Amendment immunity from suit in federal court. The district court, concluding that a monetary award against SIF would in effect be paid out of State funds, agreed and dismissed the action. On appeal, Lipofsky contends principally that the court erred because SIF operates in the manner of a private insurance carrier. Although in certain respects SIF functions similarly to a private insurer, we conclude that it is nonetheless a State agency entitled to Eleventh Amendment immunity.
 
 
 3
 Financially, SIF is meant to be largely self-sufficient, generating its operating and reserve funds from the premiums paid by its policyholders and from its investment income. See N.Y. Work. Comp. § 76 (McKinney 1994 & Supp.1996). And in certain respects SIF is subjected to state regulation as "a separate insurance business" in much the same way as are private insurers, Commissioners of the State Insurance Fund v. Low, 3 N.Y.2d 590, 595, 170 N.Y.S.2d 795, 798, 148 N.E.2d 136, 138 (1958), as its premiums, surpluses, and reserves, for example, are subject to statutory requirements that are applicable to private entities, see N.Y. Work. Comp. § 99; Commissioners of the State Insurance Fund v. Low, 3 N.Y.2d at 594, 170 N.Y.S.2d at 798, 148 N.E.2d at 138, and its "investments[ and] reserves, etc.," are subject to examination by the State Superintendent of Insurance, id. at 594, 170 N.Y.S.2d at 798, 148 N.E.2d at 138. SIF is allowed to sue in the name of its commissioners for unpaid premium, see N.Y. Work. Comp. § 93; it is also allowed to make investments, see id. § 87, to lease or own real estate, see id. § 81, and to sue, and be sued, in its own name in connection with its lease or ownership of real estate, see id. In litigation, SIF is represented not by the State's Attorney General but by its own attorney. See id. § 84; see generally Commissioners of the State Insurance Fund v. Low, 3 N.Y.2d at 594-95, 170 N.Y.S.2d at 797-98, 148 N.E.2d at 137-38.
 
 
 4
 Nonetheless, SIF is not an entity independent of the State. SIF was created by the New York Workers' Compensation Law, see N.Y. Work. Comp. § 76, and its management and operations are circumscribed by statute. The statute specifies, inter alia, the size of its governing body (eight commissioners), the length of their terms (three years), the ex officio identity of two of the commissioners (the State's industrial commissioner and its Commissioner of Health), and the provenance of the non-ex officio commissioners (policyholders insured in SIF); the State also controls the identity of the latter group, for they must be appointed by the Governor with the advice and the consent of the Senate. See id. § 77.
 
 
 5
 Further, although SIF generates its own funds, the State Legislature generally controls SIF's investments, requiring investment in the obligations of certain State and local entities, see, e.g., id. § 87-a (Municipal Assistance Corporation); id. § 87-b (City of Yonkers); id. § 87-c (certain designated public benefit corporations); see also id. § 87-g (advances to Urban Development Corporation). Supervision of these investments is the responsibility of the State's Commissioner of Taxation and Finance ("Finance Commissioner"). See id. § 85. The Finance Commissioner also acts as the custodian of SIF's funds and is responsible for making disbursements from those funds, see id.; SIF's administrative expenses are subject to the approval of the State's Budget Director, see id. § 88. The Finance Commissioner is authorized to transfer excess SIF monies to other State accounts in order to meet current State obligations. See id. § 85; Marley Company v. Boston Old Colony Insurance Co., 711 F.Supp. 153, 155 (S.D.N.Y.1989). From time to time, the State Legislature may compel such transfers. A 1982 law, for example, required SIF to make a temporary transfer of $190 million to the State's general fund. See Methodist Hospital of Brooklyn v. State Insurance Fund, 64 N.Y.2d 365, 372, 486 N.Y.S.2d 905, 907, 476 N.E.2d 304, 306 (1985). The New York Court of Appeals described that transfer as simply sending the money "from one State pocket (the SIF) to another (State general funds)". Id. at 377, 486 N.Y.S.2d at 911, 476 N.E.2d at 310.
 
 
 6
 Finally, if SIF is unable to satisfy its liabilities from the funds it has generated, the State must satisfy them: SIF is "a State agency for all of whose liabilities the State is responsible." Id. at 374, 486 N.Y.S.2d at 909, 476 N.E.2d at 308; see also id. at 375-76, 486 N.Y.S.2d at 910, 476 N.E.2d at 308; Marley Company v. Boston Old Colony Insurance Co., 711 F.Supp. at 155, 157 (State "has an ultimate obligation to satisfy any liability against the SIF"; "a judgment against the SIF is, in effect, a judgment to be satisfied ultimately by the state treasury"); Cardinal v. State of New York, 304 N.Y. 400, 405, 107 N.E.2d 569, 570 (1952) (a suit on an insurance policy issued by SIF is properly brought in the New York Court of Claims against the State itself), cert. denied, 345 U.S. 918, 73 S.Ct. 729, 97 L.Ed. 1351 (1953).
 
 
 7
 In sum, SIF is an agency created and controlled by the State; SIF's monies are not distinct from those of the State but are controlled by, and may be commingled with other funds of, the State; its funds may be used to pay other State obligations; and if a judgment against SIF cannot be satisfied out of funds generated by SIF, it is payable out of other State funds. We thus agree with the district court that if Lipofsky were to prevail on his claim for damages for SIF's alleged past wrongs, the award would effectively be paid out of State funds.
 
 
 8
 Although Congress has the power under § 5 of the Fourteenth Amendment to eliminate a state's Eleventh Amendment immunity in order to permit the enforcement against state defendants of rights guaranteed by the Fourteenth Amendment, see, e.g., Seminole Tribe of Florida v. Florida, --- U.S. ----, ----, ----, 116 S.Ct. 1114, 1125, 1128, 134 L.Ed.2d 252 (1996), such an abrogation of immunity may properly be found only where it is "obvious from a clear legislative statement," id. at ----, 116 S.Ct. at 1123 (internal quotation marks omitted). There is no such abrogation for suits under § 1983, see, e.g., Quern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), and we are aware of no federal legislation that permits suit against the State in federal court by Lipofsky on the claim he asserts. Accordingly, since the State has not consented to be sued in federal court, Lipofsky's complaint against SIF was properly dismissed.
 
 
 9
 We have considered all of Lipofsky's arguments against Eleventh Amendment immunity and have found them to be without merit. Lipofsky's other arguments, addressing the merits of his claim, are therefore moot. The judgment of the district court is affirmed.